UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.                                        8:11-cr-324-T-33TGW

EDUARDO BLANCHET and DANIEL
GUILLAN
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants' Joint Motion for Judgment of Acquittal After Jury Verdict (Doc. # 134) and Joint Motion for a New Trial (Doc. # 135), both filed on March 13, 2012. The Government filed its Responses in Opposition to the Motions on March 28, 2012 (Doc. ## 139, 140), and Defendants filed a Reply Memorandum (Doc. # 144) on April 25, 2012. For the reasons stated below, Defendants' Motions are denied.

## I. **Background**

On September 26, 2002, B.I.B Consultants was awarded a five-year, $50 million small business set-aside contract to provide foreign language instruction to members of the Armed Forces through the Special Operations Command of the United States Armed Forces ("SOCOM") at MacDill Air Force Base. (Doc. # 1 at ¶ 2). Defendant Blanchet was an owner and director of B.I.B Consultants. Id. From January 2003, through March 2006, Defendant Guillan was Vice President and

Registered Agent of B.I.B Consultants. <u>Id.</u> After being awarded the $50 million contact with SOCOM, B.I.B was no longer a "small business," and B.I.B. and its affiliates were thus no longer eligible to bid for small business set-aside contracts with the United States. <u>Id.</u>

Nevertheless, Defendants formed a new company, MiLanguages, in August 2004, and thereafter, MiLanguages bid on and was awarded a $100 million small business set-aside contract on June 8, 2007, to provide foreign language services to the Armed Forces. <u>Id.</u> at ¶¶ 3-4.

On June 21, 2011, the Grand Jury returned an Indictment against Defendants containing six counts. (Doc. # 1). In Count One, the Government charged that Defendants conspired to defraud the United States pursuant to 18 U.S.C. § 371. In Counts Two through Six, the Government charged that Defendants committed wire fraud with respect to five wire transactions pursuant to 18 U.S.C. §§ 1343, 1342.

On February 28, 2012, after an eleven-day trial, the jury returned a verdict of guilty as to each Defendant and as to each count of the Indictment. (Doc. ## 123-124). Defendants seek a judgment of acquittal and a new trial.

## II. <u>Standard of Decision</u>

### A. <u>Rule 33 Motion for a New Trial</u>

A new trial pursuant to Fed.R.Crim.P. 33 may be granted in the interests of justice or on the basis of newly discovered evidence. <u>United States v. Ramos</u>, 179 F.3d 1333, 1336 (11th Cir. 1999). A new trial may be granted in the interests of justice if the motion is filed within 14 days after verdict or finding of guilty. In this case, the Motion was timely filed. Defendants have not asserted that the discovery of new evidence warrants a new trial. Accordingly, the Court will assess whether a new trial is warranted in the interests of justice.

A Rule 33 motion for a new trial "is addressed to the sound discretion of the trial court." <u>United States v. Martinez</u>, 763 F.2d 1297, 1312 (11th Cir. 1985). "If the court concludes that . . . the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." <u>Id.</u> (internal quotation marks omitted). The court may follow this course even if the evidence is legally sufficient to sustain the verdict. <u>Id.</u> However, the Eleventh Circuit has admonished that "[a] motion for new trial must be

viewed with 'great caution.'" United States v. Reed, 887 F.2d 1398, 1404 (11th Cir. 1989) (quoting United States v. Hall, 854 F.2d 1269, 1271 (11th Cir. 1988)).

An error in admitting evidence is a ground for a new trial only if "a significant possibility . . . exist[s] that, considering the other evidence presented by both the prosecution and the defense, the statement[s] had a substantial impact upon the verdict of the jury." United States v. Arbolaez, 450 F.3d 1283, 1290 (11th Cir. 2006); see also Fed.R.Crim.P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). "An error affects the defendant's substantial rights if it 'probably had a substantial influence' on the jury's verdict." United States v. Rodriquez, 259 F. App'x 270, 276 (11th Cir. 2007) (quoting United States v. Stephens, 365 F.3d 967, 976-77 (11th Cir. 2004)).

The Court must inquire whether the error "was more likely than not a substantial factor" in the conviction. See Stephens, 365 F.3d at 980 (remanding for new trial after concluding that district court's evidentiary error "was more likely than not a substantial factor in [the defendant's] conviction").

**B.    Rule 29 Motion for Judgment of Acquittal**

A motion for acquittal is governed by Federal Rule of

Criminal Procedure 29. "As the text of the Rule indicates, and as courts and other authorities have recognized, '[t]he sole ground for a post-trial motion under Rule 29(c) is that the evidence was insufficient to sustain a conviction.'" United States v. Hunt, 412 F. Supp. 2d 1277, 1282 (11th Cir. 2005)(quoting United States v. Miranda, 425 F.3d 953, 963 (11th Cir. 2005)). "The standard for assessing the sufficiency of evidence is whether any reasonable view of the evidence, considered in the light most favorable to the government, is sufficient to allow a jury to find guilt beyond a reasonable doubt." United States v. Leonard, 138 F.3d 906, 908 (11th Cir. 1998)(citing United States v. Bush, 28 F.3d 1084, 1087 (11th Cir. 1994)).

## III. Analysis

### A. Motion for a Judgment of Acquittal

#### 1. Count One

Defendants argue that they lacked the requisite mens rea for the conspiracy charge (Count One) because the evidence shows that Defendants sought, received, and relied upon the advice of professionals related to the restructuring of MiLanguages, the arrangement between MiLanguages and B.I.B, the submission of the proposal to SOCOM, and the responses to the Small Business Administration ("SBA") during the size determinations.

In jury instruction 15, the Court advised the jury that "Good-faith is a complete defense to the charge in the indictment because the Government must prove beyond a reasonable doubt that the Defendant acted with intent to defraud. Evidence that a Defendant in good-faith followed the advice of counsel or other professionals would be inconsistent with such an unlawful intent." (Doc. # 125 at 21). The Court further instructed the jury that the Government has not proved unlawful intent if a Defendant, before acting (1) made a full and complete good-faith report of all material facts to an attorney or other professional he considered competent; (2) received the attorney's or other professional's advice as to the specific course of conduct that was followed; and (3) reasonably relied upon that advice in good-faith. Id.

Here, the jury heard Defendants' evidence purporting to establish good faith reliance upon professionals and rejected such evidence. "A jury is free to choose among reasonable constructions of the evidence" and this Court is "bound by the jury's credibility determinations, and by its rejection of the inferences raised by defendant." United States v. Hernandez, 433 F.3d 1328, 1334 (11th Cir. 2005); see United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2005)("The jury gets to make any credibility choices, and we will assume that they made them all in the way that supports the verdict."). "The

evidence does not have to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." <u>Hernandez</u>, 433 F.3d at 1334-35 (internal citation omitted). "The evidence is sufficient so long as a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt." <u>United States v. Pineiro</u>, 389 F.3d 1359, 1367 (11th Cir. 2004).

The Court is not free to override the jury's verdict based upon Defendants' conclusory arguments. Viewing the evidence in the light most favorable to the jury's verdict of guilty, Defendants fail to show that the evidence was insufficient to support the conspiracy convictions. Rather, as argued by the Government, "strong evidence--including the testimony of Edward Borsoi, Bank First personnel, SBA personnel, and the very professionals on whom Defendants purportedly relied, attorney Terry Hadley, attorney Amy O'Sullivan, and Vicky Strycharske--established that Defendants conspired to defraud the United States and to commit wire fraud." (Doc. # 139 at 4). Accordingly, the Court denies the Motion for a Judgment of Acquittal as to Count One of the Indictment.

### 2. <u>Counts Two through Six</u>

Defendants argue that they lacked the requisite mens rea

to support the wire fraud convictions on Counts Two through Six of the Indictment because the evidence showed that MiLanguage's operating account was the subject of a seizure warrant executed on July 15, 2010.[1] It is Defendants' theory that the Government cannot claim to be defrauded or otherwise misled about MiLanguages after the seizure warrant: "the Government failed to present any evidence that any of the transfers was made with intent to deceive. Indeed, there can be no element of deceit when each transfer and its purposes were fully disclosed to the Government." (Doc. # 134 at 5).

Defendants also assert that mens rea was lacking for Counts Two through Six of the Indictment because the Government entrapped them into perpetrating the alleged fraud. Specifically, Defendants point out that the Government allowed MiLanguages to perform under the contract, even though the Government believed that the contract had been procured by fraud, and that the Government should have barred MiLanguages from further performance under the contract. Defendants argue, "[p]rinciples of fairness mandate that the Government

---

[1] Count Two related to a wire dated July 15, 2010, in the amount of $141,246.99. Count Three related to a wire dated November 10, 2010, in the amount of $184,549.68. Count Four related to a wire dated December 2, 2010, in the amount of $208,507.66. Count Five related to a wire dated December 16, 2010, in the amount of $283,886.37. Count Six related to a wire dated February 24, 2011, in the amount of $366,013.07. (Doc. # 1 at 9).

not be allowed to now prosecute the very same actions that were not only requested but approved by the Government *after* probable cause was determined to exist related to the procurement of the contract." (Doc. # 134 at 6)(emphasis in original).

Defendants weave an intricate web of arguments concerning Counts Two through Six of the Indictment. However, when broken down to the basics, the Court determines that acquittal is not warranted as to any count. Here, the Government demonstrated and the jury found that the MiLanguages contract was procured by fraud. Therefore, the wire transfers made pursuant to that fraudulently obtained contract sent from the Government to MiLanguages in the amounts indicated above were the proper subject of the Indictment.

The Court concurs with the Government's argument that "the United States Attorney's Office and the investigating agencies cannot simply choose to terminate a government contract because of a pending criminal investigation, and to implicate that as fact misapprehends and misstates government contracting in general and the requirements of due process." (Doc. # 139 at 7). Thus, viewing the evidence in the light most favorable to the Government, the evidence was more than sufficient to sustain Defendants' convictions on all counts of the Indictment.

## B.   **Motion for a New Trial**

Defendants assert seven grounds for a new trial, which follow: (1) the Court did not allow attorney Jon Kane to testify about Government involvement in allowing MiLanguages to perform while under investigation; (2) the jury was not advised that Ed Borsoi was an unindicted co-conspirator; (3) the Indictment should have been redacted to the extent that it charged that Defendants conspired with others known and unknown to the Grand Jury; (4) Kenneth Dodd testified but had no personal knowledge; (5) the Court did not allow Defendants to introduce a letter from Steve Smithfield's doctor concerning Smithfield's medical condition; (6) AUSA Thomas misrepresented an alleged admission by Defendant Blanchet to Vicky Strycharske in rebuttal closing argument; and (7) the Court failed to give certain requested language in its jury instructions.

### 1.   **Jon Kane**

Defendants assert that a new trial is warranted as to Counts Two through Six "because [the jury] was unaware of the Government's role in MiLanguages performance of its contractual obligations under the contract for more than a year after the seizure warrants [and] Jon Kane was the witness that could have established those facts for the jury." (Doc. # 135 at 2).

The Government, on the other hand, explains that the probative value of Kane's purported testimony would have been substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury pursuant to Rule 403 of the Federal Rules of Evidence.

In addition, prior to trial, the Government agreed in good faith and at the Defendants' request not to present any evidence about what the Government deemed to be plea negotiations and Air Force suspension proceedings. Allowing Kane to testify as to the matters raised in the Motion for New Trial would have opened the door to the Government presenting testimony about the Air Force suspension proceedings and its plea negotiations with Defendants, in direct violation of the Government's good faith agreement to limit such testimony.

Considering all of the evidence presented at trial, no significant possibility exists that the Court's limitation of Kane's testimony had a substantial impact on the jury's verdict, and the exclusion of such testimony does not warrant a new trial.

### 2. **Edward Borsoi**

Defendants assert that a new trial is warranted because the jury was not advised that Edward Borsoi was an unindicted co-conspirator and Defendants were unable to argue that Borsoi's testimony was influenced by his desire to stay in the

Government's good graces. However, Defendants were given ample opportunity to cross-examine Borsoi and uncover his motives, attack his credibility, and reveal other factors that may have colored his testimony. Accordingly, the Court denies the Motion for a New Trial concerning Borsoi.

### 3.  Language in the Indictment

The Indictment charges that Defendants "did knowingly and willfully combine, conspire, confederate, and agree with each other and *other individuals both known and unknown to the Grand Jury*" to accomplish the acts alleged in the Indictment. (Doc. # 1 at 3)(emphasis added). Defendants assert that a new trial is warranted because the language italicized above was not redacted before the Indictment was furnished to the jury. Specifically, Defendants argue "the Government advised the Defendants in writing that only Edward Borsoi was a known but unindicted co-conspirator [and] Terry Hadley was not an unindicted co-conspirator." (Doc. # 135 at 4). Defendants assert that the jury may have believed that one of the professionals, such as Hadley or Strycharske, was an unindicted co-conspirator.

As pointed out by the Government, Defendants offer no legal authority for their argument concerning the language contained in the Indictment. Likewise, Defendants had a full

and fair opportunity to cross-examine Hadley, Strycharske and any other professionals about their interactions and discussions with the Government, including any representations that the Government might have made to them. Defendants also had the opportunity during closing arguments to point out any ambiguities, flaws, or deficiencies in the Indictment. They failed to do so, and the Court denies the Motion for a New Trial to the extent it is asserted on this ground.

### 4. Kenneth Dodd

Defendants argue that a new trial is warranted because witness Kenneth Dodd lacked personal knowledge and his testimony was therefore improper based on Rule 602 of the Federal Rules of Evidence. Defendants are correct that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." United States v. Spellissy, 374 F. App'x 898, 900 (11th Cir. 2010)(citing Fed.R.Evid. 602). However, the Court determines that Dodd's testimony was appropriate under Rule 701 of the Federal Rules of Evidence.

A review of the record shows that Dodd's testimony was limited to providing an overview about SBA small business set-aside contracts and the size determination process (including

the kind of information required to make size determinations and the various forms that are used in making the size determinations). To be certain, Dodd did not offer testimony regarding the specific facts of this case, rather he provided background information so that the jury could put the more specific testimony about the facts of this case into context. Dodd's general testimony was based on particularized, personal knowledge about the SBA and was proper, even if he did not have actual knowledge about the conduct charged in the Indictment. <u>See</u> <u>United States v. Hill</u>, 643 F.3d 807, 841-42 (11th Cir. 2011)(allowing lay testimony based on "particularized knowledge garnered from years of experience within the field"). Accordingly, a new trial is not warranted on the basis of Dodd's testimony.

### 5. **Letter from Steve Smithfield's Physician**

Witness Steve Smithfield suffered from a stroke in 2007, and Defendants sought to introduce a letter from Smithfield's physician regarding Smithfield's medical condition. This Court properly excluded the letter. That letter had no probative value and had no bearing on the charges of the Indictment or Defendants' defense. Defendants now argue: "The Government used Mr. Smithfield's alleged medical condition to curry sympathy with the jury when AUSA Thomas stated in

closing argument that Mr. Smithfield had suffered 2 strokes and still came to trial and testified to the best of his ability. In truth, Mr. Smithfield used the doctor's note as a way to convince his new boss during the time frame that he conducted the size determination that his stroke (5 years earlier) justified him getting more favorable working conditions than others." (Doc. # 135 at 6).

Defendants' arguments are not cogent because Defendants had full access to Smithfield's medical records and cross-examined him extensively regarding his medical condition. Specifically, Defendants were able to cross-examine Smithfield regarding how his medical condition might have affected his ability to conduct the size determination in this case. The Court's decision to exclude the doctor's note had no prejudicial impact on this case whatsoever. Accordingly, a new trial is not warranted on this issue.

### 6. <u>Vicky Strycharske</u>

Defendants assert that AUSA Thomas improperly told the jury in rebuttal closing argument that Defendant Blanchet admitted to Vicky Strycharske that MiLanguages was his company. The Government does not deny that the AUSA made the statement, but asserts that the statement does not warrant a

new trial.[2]   Under the law of the Eleventh Circuit, it is prosecutorial misconduct to argue "prejudicial facts not in evidence." <u>Muhammad v. McNeil</u>, 352 F. App'x 371, 376 (11th Cir. 2009)(citing <u>Berger v. United States</u>, 295 U.S. 78, 84 (1935)).   In addition, a material misstatement of fact in a closing argument is improper.   <u>Ruiz v. Fla. Dep't of Corr.</u>, 439 F. App'x 831, 834 (11th Cir. 2011)(citing <u>Davis v. Zant</u>, 36 F.3d 1538, 1548 n.15 (11th Cir. 1994)).   Here, the AUSA remarked in rebuttal that Defendant Blanchet admitted to Vicky Strycharske that he owned MiLanguages.   However, Strycharske did not directly say that during her testimony.   She gave testimony on February 15, 2012, and stated during direct examination that she met with Blanchet, and he expressed that he was angry that Guillan thought that MiLanguages was Guillan's company.   Strycharske testified that Blanchet told her that Blanchet had been good to Guillan and had made Guillan a wealthy man, but the money was Blanchet's money.

---

[2] The Government indicates that a trial transcript is not available to review in order to ascertain whether the AUSA actually made the statement in question.   The Court has an electronically stored transcript of the trial and has listened to the relevant rebuttal argument and testimony.   The Court confirms that the AUSA did state in her rebuttal closing argument that Defendant Blanchet admitted to Vicky Strycharske that MiLanguages was his company at a Cracker Barrel restaurant in the Fall of 2006.   The rebuttal closing argument was made on the morning of February 27, 2012.

While a reasonable person could infer from these statements that Blanchet believed that MiLanguages was his company, Strycharske did not technically testify that Blanchet admitted to her that MiLanguages was his company.

The Court must determine whether the AUSA's remarks prejudiced Defendants. In order to assess the prejudicial impact of a prosecutor's statement, the Court evaluates such statements in the context of the trial as a whole and assesses their probable impact on the jury. United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998). In making this determination, the Court will evaluate four factors: "(1) the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether they are isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof to establish the guilt of the accused." United States v. Lopez, 590 F.3d 1238, 1256 (11th Cir. 2009)(citing Davis v. Zant, 36 F.3d 1538, 1546 (11th Cir. 1994)).

Neither party addresses these factors in the submissions before this Court. The Government simply argues that the misstatement was not intentionally made and that "a single remark during a two-week trial is 'so minor that it could not

possibly have affected the outcome of the trial.'" (Doc. # 140 at 11)(quoting <u>United States v. Campa</u>, 459 F.3d 1121, 1153 (11th Cir. 2006)).  However, in <u>Campa</u>, the prosecutor's misstatement, made during a seven-month trial, was that opposing counsel was a "spy for Cuba." <u>Id.</u> Here the alleged misstatement did not concern opposing counsel's character, but rather misstated that Defendant Blanchet made an admission.

After reviewing the factors noted above, however, the Court determines that a new trial is not warranted. The remark in question was an isolated overstatement of the evidence, it was not extensive, and according to AUSA Thomas, it was not intentionally made. In addition, the Defense did not raise a contemporaneous objection during the rebuttal closing argument.  The Court instructed the jury on multiple occasions that "anything the lawyers say is not evidence and isn't binding on you." (Doc. # 125 at 4).  Immediately prior to making the statement in question, the AUSA reminded the jury that the statements of the lawyers are not evidence and that it is the jury's recollection of the evidence that matters. The statement was not a fabricated piece of evidence, rather it was an isolated incident of the prosecutor putting her own spin on the weight of the evidence.  The Court does not find that it caused significant prejudice to the accused because

the competent proof of guilt in this case as to both Defendants was overwhelming. As explained in United States v. Miranda, 220 F. App'x 965, 971-72 (11th Cir. 2007), "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would be different. . . . In other words, the misconduct must be so pronounced and persistent as to permeate the entire atmosphere of the trial." Id. (internal citations omitted).

Here, in light of the overpowering evidence of guilt, the Court cannot find that the single comment in question changed the outcome of the case. Further, as stated in United States v. Smith, 700 F.2d 627, 634-35 (11th Cir. 1983), "It is no ground for reversal that a prosecutor misstates the evidence, where no objection is made and the jurors were properly instructed that they are to rely on their own recollection of the evidence." Id. (citing United States v. Bizzard, 647 F.2d 1382, 1389 (11th Cir. 1982)). Accordingly, the Court determines that a new trial is not warranted on this basis.

### 7. Jury Instructions

Defendants argue that a new trial is warranted because the Court (1) omitted two sentences from the jury instructions proposed by Defendant and (2) required Defendants to work

together with the Government to craft a neutral "theory of defense" instruction.

This Court enjoys "broad discretion in formulating a jury charge as long as the charge as a whole is a correct statement of the law." <u>United States v. Perez-Tosta</u>, 36 F.3d 1552, 1564 (11th Cir. 1994). A conviction will not be reversed based on improper jury instructions unless "issues of law were presented inaccurately or the charge improperly guided the jury in such a substantial way as to violate due process." <u>Id.</u>

A district court's failure to give a requested instruction is reviewed for an abuse of discretion. <u>United States v. Yeager</u>, 331 F.3d 1216, 1222 (11th Cir. 2003). A denial of a requested jury instruction is reversible error only where the requested instruction: "(1) was correct, (2) was not substantially covered by the charge actually given, and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." <u>Id.</u> at 1223. Nevertheless, this Court "is not bound to use the exact words and phrasing requested by defense counsel in its jury charge." <u>United States v. Gonzalez</u>, 975 F.2d 1514, 1517 (11th Cir. 1992). When deciding if the difference in the requested instruction and the one actually given is significant, the

Court must "ascertain whether the charge, when viewed as a whole, fairly and correctly states the issues and the law." Id.

It should be noted that this Court gave each instruction that is the subject of the Motion for a New Trial. It did not give the instructions verbatim as requested by Defendants. Rather, reviewing the pattern jury instructions for the Eleventh Circuit, binding case law, and using a common-sense approach, the Court carefully crafted jury instructions that reflected the law of the Eleventh Circuit in such a manner that a panel of non-lawyers (the jury) could fully understand those instructions. If that meant omitting repetitive and overly esoteric definitions (as those proposed by Defendants), so be it.

In addition, the Court notes that the "theory of defense" instruction originally submitted by Defendants was so one-sided and argumentative that it would have been fundamentally unfair to give it. Rather than scrapping the entire instruction, the Court, acting within the bounds of its discretion, required the parties to work together to fashion an appropriate theory of defense instruction. After fully considering the arguments presented, the Court determines that a new trial is not warranted on this ground.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants' Joint Motion for Judgment of Acquittal After Jury Verdict (Doc. # 134) and Joint Motion for a New Trial (Doc. # 135) are **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>14th</u> day of May 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record